UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Glenn Lanaia,<br><br>                                   Plaintiff,<br><br>          -against-<br><br>Trans Union LLC a/k/a TransUnion; Experian Information Solutions, Inc.; Equifax Information Services LLC; Porsche Financial Services, Inc.,<br><br>                                   Defendants. | Civil Action<br>Case No.: 2:26-cv-01903<br><br><br>**COMPLAINT** |

Plaintiff Glenn Lanaia ("Plaintiff"), by and through his attorneys, Petroff Amshen LLP, as and for his complaint against the defendants named herein, hereby alleges the following upon personal knowledge, review of public record, and/or otherwise upon information and belief:

1.      Plaintiff brings this action against Trans Union LLC a/k/a TransUnion ("TransUnion"), Experian Information Solutions, Inc. ("Experian"), Equifax Information Services LLC ("Equifax") (collectively, the "CRAs"), and Porsche Financial Services, Inc. ("Porsche"), arising from their willful and negligent violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., and its implementing Regulation V, 12 C.F.R. Part 1022.

## PARTIES

2.      Plaintiff is an individual resident of the State of New York, residing in Suffolk County. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

3.      TransUnion is a Delaware limited liability company, and is a "consumer reporting agency," as defined by 15 U.S.C. §§ 1681a(f) and 1681a(p).

4.      Experian is a corporation organized and existing under the laws of the State of Ohio and is a "consumer reporting agency" as defined by 15 U.S.C. §§ 1681a(f) and 1681a(p).

3

5. Equifax is a limited liability company organized under the laws of the State of Georgia, and is a "consumer reporting agency," as defined by 15 U.S.C. §§ 1681a(f) and 1681a(p).

6. Porsche is a foreign business entity, incorporated under the laws of the State of Delaware. Porsche is a "furnisher" of information as contemplated by 15 U.S.C. § 1681s-2

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Plaintiff's claims arise under federal law.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district, including the harm suffered by Plaintiff.

## STATEMENT OF FACTS

9. In or about September 2023, Plaintiff entered into an automobile lease agreement with Porsche for a motor vehicle, Account No. 110028**** (the "Lease").

10. At the time of the transaction, Plaintiff paid the applicable sales tax and the first monthly payment due under the Lease.

11. Shortly after obtaining the vehicle, Plaintiff discovered that it was severely defective. Specifically, the vehicle experienced a sudden and uncontrolled acceleration that caused it to veer off the road and violently strike a tree.

12. As a direct result of this dangerous defective condition, the vehicle sustained substantial damage and was rendered unsafe for use.

13. Plaintiff arranged for the vehicle to be transported via flatbed tow truck and returned it to Porsche.

4

14. Plaintiff communicated with Porsche on multiple occasions regarding the defective nature of the vehicle, the accident it caused, and the return of the vehicle to Porsche's possession.

15. Because the vehicle was returned to Porsche as a direct consequence of its own defective condition, rendering it unsafe and unfit for its intended use, no balance remained due and owing under the Lease, and the account should not have been reported as delinquent, charged-off, or in collection.

16. Despite Plaintiff's return of the vehicle and his communications with Porsche, Porsche proceeded to report the Lease as a derogatory account to CRAs designating the account as a charge-off with an outstanding balance of $21,324.00, as if Plaintiff had simply abandoned a debt he owed.

17. As a result of this inaccurate and wholly unjustified reporting, the Lease appeared across Plaintiff's consumer credit files at all three bureaus as a derogatory tradeline, inflicting immediate, severe, and ongoing damage to his creditworthiness and financial reputation.

18. Plaintiff first became aware of the full extent of this damaging and inaccurate credit reporting on or about August 15, 2025, upon reviewing his consumer credit reports.

19. As of August 15, 2025, the Lease was reported as a charge-off and collection account across the CRAs, with an amount past due of $21,324.00, an account Plaintiff had rightfully surrendered to Porsche's possession nearly two years earlier.

20. On September 8, 2025, Plaintiff submitted written disputes to all three CRAs, formally challenging the accuracy of the Lease reporting and providing the factual basis for his dispute. Plaintiff's disputes were submitted via certified mail.

21. In his disputes, Plaintiff explained that the Lease was being inaccurately reported as a charge-off and collection account, that the vehicle had been returned to Porsche following a

dangerous mechanical defect that caused a collision, and that no legitimate balance remained due and owing.

22.    Each of the CRAs was accordingly placed on direct notice that the derogatory status of the Lease was inaccurate, that the vehicle had been returned to the furnisher, and that the reported balance of $21,324.00 was not legitimately owed by Plaintiff.

23.    Despite this notice and their clear statutory obligations, Defendants failed to conduct a reasonable reinvestigation and failed to correct or delete the inaccurate reporting.

24.    On November 5, 2025, Plaintiff obtained updated consumer credit reports from all three CRAs. The Lease remained reported as a charge-off and collection account on every single report — precisely as it had been reported before Plaintiff's disputes were submitted.

a) TransUnion continued to report the Lease as a charge-off with an amount past due of $21,324.00, accompanied by the remark: "Dispute Resolved — Subscriber Disagrees." TransUnion reported no payment history whatsoever for the account, yet unconditionally accepted Porsche's characterization of the account without conducting any meaningful inquiry.

b) Experian continued to report the Lease as a charge-off, with a payment history reflecting a manufactured progression of delinquency: 30-day late in November 2023, 60-day late in December 2023, 90-day late in January 2024, 120-day late in February 2024, and repossession and collection entries continuing through October 2025. Experian closed the dispute against Plaintiff with the remark: "Unpaid Balance Reported As A Loss By Credit Grantor, Dispute Resolved — Consumer Disagrees" — accepting Porsche's account of events in its entirety while disregarding Plaintiff's documented dispute.

c) Equifax continued to report the Lease as a charge-off with an amount past due of $21,324.00, accompanied by the remark: "Consumer Disputes After Resolution, Charged Off Account, Auto, Lease." Equifax, too, resolved the dispute in the furnisher's favor, maintaining derogatory reporting that Plaintiff's dispute had specifically and factually challenged.

25.    The CRAs' uniform failure to correct this inaccurate reporting, across all three bureaus, following specific and documented disputes, does not reflect a coincidence of

6

independent errors. It reflects a systemic failure to conduct any genuine reinvestigation, an automated rubber-stamping of the furnisher's position, and a willful disregard of Plaintiff's rights.

26. The consequences of this systemic failure have been concrete and severe. Plaintiff's Experian credit score, as of November 5, 2025, stands at 646, rated "FAIR", crushed by the weight of the Lease charge-off designation on that bureau.

27. By stark contrast, Plaintiff's TransUnion and Equifax credit scores as of that same date were 757 and 756, respectively, both rated "GOOD." The dramatic disparity between Plaintiff's Experian score and his scores at the other two bureaus is a precise and telling measure of the concrete harm that a single, inaccurately reported charge-off can inflict on a consumer's credit profile, and of the failure of this reinvestigation process to achieve any result other than the perpetuation of inaccurate information.

28. The continued, post-dispute reporting of the Lease as a charge-off across all three CRAs misrepresents the true nature and status of the account, perpetuates materially false and damaging information throughout Plaintiff's credit files, and has rendered Plaintiff's Experian-based credit profile a distorted and harmful misrepresentation of his actual creditworthiness.

29. As a direct and proximate result of Defendants' continued inaccurate reporting, Plaintiff has been denied credit on multiple occasions.

30. In or around February 2026, Plaintiff applied for a Wells Fargo Reflect Visa Card and was denied at the time of submission. Wells Fargo assigned that application reference number 20260699509031.

31. On a separate occasion, Plaintiff again applied for a Wells Fargo Reflect Visa Card, application number 20260649509790. On March 5, 2026, Plaintiff received a formal adverse

action notice from Wells Fargo Bank, N.A., denying that application. Wells Fargo expressly stated its decision was based in whole or in part on a consumer report obtained from Equifax.

32. Both denials are a direct and concrete consequence of the CRAs continued reporting of the Lease as a charge-off, an account Plaintiff specifically disputed and which the CRAs failed to correct.

33. Plaintiff has incurred and continues to incur financial costs, including the costs of obtaining credit reports, certified mailings, and attorneys' fees and litigation costs to investigate and rectify Defendants' errors, to protect himself from collection actions arising from a balance he does not legitimately owe, and to prosecute this action.

34. Plaintiff has suffered and continues to suffer emotional distress, including anxiety, frustration, and a profound sense of helplessness, stemming directly from Defendants' failure to correct the wrongful reporting, the damage to his financial reputation, and the burden of being forced to litigate the removal of an account he returned to Porsche in good faith years ago.

35. Plaintiff has spent considerable time and effort attempting to resolve this matter prior to the commencement of this action.

## CAUSES OF ACTION

### COUNT I: Willful Noncompliance With The FCRA Against Porsche
### (Violations of 15 U.S.C. § 1681s-2(b))

36. Plaintiff incorporates by reference each of the preceding paragraphs.

37. Porsche is a "person" and a "furnisher" of information to consumer reporting agencies as defined by and subject to the FCRA, including the duties enumerated under 15 U.S.C. § 1681s-2.

38. Porsche received notice of Plaintiff's dispute from the CRAs.

8

39. Porsche provided information relating to Plaintiff to the CRAs that it knew or had reasonable cause to believe was inaccurate.

40. Specifically, Porsche reported the Lease as an outstanding charge-off with a balance of $21,324.00 owed by Plaintiff, despite having accepted return of the vehicle from Plaintiff following a dangerous mechanical defect that caused a collision, and despite the absence of any legitimate basis to attribute an outstanding balance to Plaintiff under those circumstances.

41. Upon receipt of notice from the CRAs, Porsche had reasonable cause to believe that the information it was furnishing was inaccurate, including because Plaintiff's dispute expressly identified the circumstances of the vehicle's return, Porsche had direct knowledge that the vehicle had been surrendered to its possession, and Porsche lacked any documentation sufficient to verify that a legitimate balance of $21,324.00 remained due and owing by Plaintiff following that return.

42. Notwithstanding its notice of the dispute, Porsche continued to furnish information regarding the Lease to the CRAs, verifying the charge-off and outstanding balance as accurate.

43. Porsche provided information concerning the Lease to the CRAs without ensuring that the information was accurate, complete, or verifiable.

44. Porsche violated its duties under 15 U.S.C. § 1681s-2(b) by failing to: (1) conduct a reasonable and proper investigation with respect to the disputed information; (2) review all relevant information provided by the CRAs concerning the dispute; (3) report the results of its investigation to the CRAs; and (4) if the investigation found the information to be inaccurate or incomplete or if it could not be verified, instruct the CRAs to modify, delete, or permanently block the reporting of that item of information.

45. Porsche's conduct was willful.

46.     Porsche acted with knowledge of its obligations under the FCRA and in reckless disregard of Plaintiff's rights and the accuracy of the information it reported.

47.     Porsche's willfulness is further evidenced by its continued reporting of the Lease as a charge-off with an outstanding balance of $21,324.00, and by its furnishing of misleading dispute-resolution notations, including "Dispute Resolved — Subscriber Disagrees" and "Unpaid Balance Reported As A Loss By Credit Grantor, Dispute Resolved — Consumer Disagrees", suggesting accuracy despite the absence of any legitimate basis to attribute the reported balance to Plaintiff following the return of the vehicle.

### COUNT II: Negligent Noncompliance With The FCRA Against Porsche
### (Violations of 15 U.S.C. §1681s-2(b))

48.     Plaintiff incorporates by reference each of the preceding paragraphs.

49.     Porsche's conduct constituted negligent noncompliance as a furnisher of information, thereby violating its duties under 15 U.S.C. § 1681s-2(b).

50.     Porsche failed to exercise reasonable care in its information furnishing practices and in its investigation processes upon receiving notice of Plaintiff's dispute, thereby breaching its duties owed to Plaintiff under the FCRA.

### COUNT III: Willful Noncompliance With The FCRA Against The CRAs
### (Failure to Conduct Reasonable Reinvestigation - Violation of 15 U.S.C. § 1681i)

51.     Plaintiff incorporates by reference each of the preceding paragraphs.

52.     The CRAs are each a "consumer reporting agency" as defined by and subject to 15 U.S.C. § 1681a(f).

53.     Following Plaintiff's mailing of his dispute package on September 8, 2025, the CRAs received Plaintiff's notice of dispute concerning the inaccurate information related to the Lease appearing on his consumer reports.

54.     Pursuant to 15 U.S.C. § 1681i(a), upon receipt of Plaintiff's dispute, the CRAs were required to conduct a reasonable reinvestigation to determine the accuracy of the disputed information and record the current status of the disputed information, or delete the item from the file, within thirty (30) days of receiving the dispute.

55.     The CRAs failed to conduct a reasonable reinvestigation of Plaintiff's dispute.

56.     A reasonable reinvestigation would have included, at a minimum: (a) thoroughly reviewing all relevant information and documentation submitted by Plaintiff with his dispute, including his written explanation that the vehicle had been returned to Porsche following a dangerous mechanical defect that caused a collision and that no legitimate balance remained due and owing; (b) promptly notifying Porsche of Plaintiff's dispute and providing Porsche with all relevant information received from Plaintiff; and (c) requesting from Porsche actual verifying documentation, including any agreement, demand, or instrument substantiating the existence of a legitimate outstanding balance of $21,324.00 owed by Plaintiff following the return of the vehicle.

57.     The CRAs failed to review and consider all relevant information submitted by Plaintiff in connection with his dispute.

58.     The CRAs' failure to delete or correct the inaccurate information, or to accurately record the current status of the disputed information, as evidenced by their continued reporting of the Lease as a charge-off with an outstanding balance of $21,324.00 following the completion of their reinvestigations, demonstrates their failure to conduct a reasonable reinvestigation.

59.     The CRAs' failure to perform a reasonable reinvestigation after receiving Plaintiff's detailed and documented dispute was willful.

60.     Experian's post-dispute reporting affirmatively worsened the accuracy of Plaintiff's credit file by introducing a manufactured progression of monthly delinquencies that had

11

not appeared in the pre-dispute reporting, demonstrating not merely a failure to correct but a reckless disregard for the accuracy of the information being reported.

61.    The CRAs acted with knowledge of their statutory duties under 15 U.S.C. § 1681i or in reckless disregard of those duties and Plaintiff's rights.

### COUNT IV: Negligent Noncompliance With The FCRA Against The CRAs
### (Failure to Conduct Reasonable Reinvestigation - Violation of 15 U.S.C. § 1681i)

62.    Plaintiff incorporates by reference each of the preceding paragraphs.

63.    The CRAs' conduct constituted negligent noncompliance with their duty to conduct a reasonable reinvestigation of disputed information under 15 U.S.C. § 1681i(a).

64.    The CRAs failed to exercise reasonable care in their reinvestigation process concerning Plaintiff's dispute of the Lease.

### COUNT V: Willful Noncompliance With The FCRA Against The CRAs
### (Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy - Violation of 15 U.S.C. § 1681e(b))

65.    Plaintiff incorporates by reference each of the preceding paragraphs.

66.    Pursuant to 15 U.S.C. § 1681e(b), whenever a CRA prepares a consumer report, it must follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

67.    The CRAs failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff.

68.    The continued reporting of the Lease as a charge-off with an outstanding balance of $21,324.00, on an account for a vehicle Plaintiff returned to Porsche's possession following a dangerous mechanical defect, and the reporting of internally inconsistent information regarding that account across the three bureaus, demonstrates the CRAs' failure to adhere to this statutory mandate. Specifically, Experian and Equifax reported a detailed progression of monthly

12

delinquencies spanning November 2023 through the date of filing, while TransUnion reported no payment history whatsoever for the same account yet simultaneously designated it a charge-off with the identical past-due balance, contradictions that reasonable data intake, processing, and reporting procedures would have flagged and resolved.

69.     Reasonable procedures would include robust mechanisms to reconcile contradictory information received from furnishers or generated within their own systems, and to flag and investigate account-level data that is internally inconsistent across reporting periods or between bureaus receiving information from the same furnisher.

70.     The CRAs' failure to establish or follow such reasonable procedures was willful, representing a knowing failure to comply with their statutory duties or a reckless disregard for the accuracy of the information they compile and disseminate about consumers like Plaintiff.

## COUNT VI: Negligent Noncompliance With The FCRA Against The CRAS
### (Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy - Violation of 15 U.S.C. § 1681e(b))

71.     Plaintiff incorporates by reference each of the preceding paragraphs.

72.     The CRAs' conduct constituted negligent noncompliance with their duty to follow reasonable procedures to assure maximum possible accuracy of information in their consumer reports under 15 U.S.C. § 1681e(b).

73.     The CRAs failed to exercise reasonable care in their consumer report preparation and accuracy assurance processes, as evidenced by their persistent reporting of the Lease as a charge-off with an outstanding balance of $21,324.00, the internally inconsistent payment histories reported across the three bureaus for the same account, and their failure to reconcile or flag those contradictions prior to disseminating Plaintiff's consumer reports to third parties.

13

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally where appropriate, for the following:

I.    Actual damages in an amount to be fully determined at trial, including but not limited to compensation for damage to creditworthiness and reputation, loss of credit opportunities on favorable terms, financial burden, and emotional distress, pursuant to 15 U.S.C. §§ 1681n(a)(1), 1681o(a)(1);

II.   Statutory damages in an amount ranging from $100 to $1,000 for each willful violation of the FCRA, as permitted under 15 U.S.C. § 1681n(a)(1)(A);

III.  Punitive damages in an amount to be determined at trial as may be allowed under 15 U.S.C. § 1681n(a)(2) for Defendants' willful and reckless violations of the FCRA;

IV.   Plaintiff's reasonable attorneys' fees and costs incurred in prosecuting this action, pursuant to 15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2).

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, Plaintiff requests a trial by jury on all issues so triable.

Dated: Brooklyn, New York
       March 27, 2026

PETROFF AMSHEN LLP
*Attorneys for Plaintiff,*
Glenn Lanaia

*/s/ Serge F. Petroff*
Serge F. Petroff, Esq.
1795 Coney Island Avenue, Third Floor
Brooklyn, New York 11230
Telephone: (718) 336-4200
Email: Spetroff@petroffamshen.com

14